UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| TIMOTHY S. MORROW, <br><br> Plaintiff, <br><br> v. <br><br> T. HEISHMAN, B. MEYERS, McCULLUM, ROGERS, T. HAMRICK, and JOHN DOE, <br><br> Defendants. | CAUSE NO. 3:25-CV-211-TLS-AZ |

**OPINION AND ORDER**

Timothy S. Morrow, a prisoner without a lawyer, filed a complaint about prison officials failing to protect him from an attack by his roommate at Miami Correctional Facility. ECF 1. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (cleaned up). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Morrow details in his complaint how he started reporting on August 25, 2024, that he did not feel safe in his room with his roommate. First, he wrote the Department of Internal Investigations via his tablet. After he got no response, he submitted two requests in his counselor's box—one on August 26 and one on August 27—asking to be pulled out to talk to her about his not feeling safe in his cell.

On August 27, 2024, Counselor Murphy pulled Morrow out and had him fill out a Request for Protection form. Morrow explained that his roommate threatened him with a knife and had robbed him. He said his roommate was affiliated with the Aryan Brotherhood.

Counselor Murphy scanned the form and emailed it off, recommending that Morrow be approved for protective custody. Counselor Murphy told Morrow to go wait in the dorm until someone came to get him for the move. That afternoon, E-Squad came to Morrow's cell to search it at Counselor Murphy's request. E-Squad found a metal knife. Morrow, however, was not moved and his Protective Custody Request (PC Request) was denied.

Around 5:00 the next morning, August 28, 2024, Morrow's cellmate choked him with both his hands. Then he cut Morrow with a dull razor blade on his upper left shoulder, near his collarbone. Morrow sues D.I.I. T. Heishman, MHL Rogers, Lieutenant B. Meyers, Captain McCullum, Casework Manager T. Hamrick, and Shift Supervisor John Doe—the officials who denied his PC Request—for failing to protect him from his cellmate.[1]

The Eighth Amendment imposes a duty on prison officials to "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). When an inmate is attacked by another inmate, the Eighth Amendment is violated only if "deliberate indifference by prison officials effectively condones the attack by allowing it to happen." *Haley v. Gross*, 86 F.3d 630, 640 (7th Cir. 1996). The defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "Exercis[ing] poor judgment . . . falls short of meeting the standard of consciously disregarding a known risk to his safety." *Lewis v. Richards*, 107 F.3d 549, 554 (7th Cir. 1997). "[A] complaint that identifies a specific, credible, and

---

[1] Morrow is advised that if this information is not specific enough for the Indiana Department of Correction to identify this Defendant Shift Supervisor John Doe, Morrow will need to use discovery in order to learn the identity of this defendant and file an amended complaint that names this defendant. It is permissible to sue a "placeholder defendant" in federal court, but as a practical matter an unnamed defendant cannot be served with process. *See Rodriguez v. McCloughen*, 49 F.4th 1120, 1121 (7th Cir. 2022). This defendant must be identified and served within the two-year statute of limitations period and the deadline specified in Federal Rule of Civil Procedure 4(m). *Id.* Because this incident occurred in August 2024, Morrow has sufficient time to learn this defendant's identity through discovery without needing the court's assistance.

2

imminent risk of serious harm and identifies the prospective assailant typically will support an inference that the official to whom the complaint was communicated had actual knowledge of the risk." *Gevas v. McLaughlin*, 798 F.3d 475, 481 (7th Cir. 2015). General requests for help, expressions of fear, and even prior attacks are insufficient to alert guards to the need for action. *Klebanowski v. Sheahan*, 540 F.3d 633, 639–40 (7th Cir. 2008). Morrow has plausibly alleged that those defendants were deliberately indifferent to a substantial risk of harm he faced from his cellmate, and a claim against them may proceed.

Morrow was able to obtain medical care for his injury when his unit went to breakfast. He stopped at the OSB2 Med Window, and the nurse there notified custody staff about the attack. After a lot of apparent administrative missteps, Morrow was removed from his cell later that day and placed in a holding cell until a bed could be found for him. Morrow complains that when he was in the holding cell, he told several prison staff about his property being left in his old cell. But when his property was finally collected and brought to him, all that was left was a cut-up mat, a blanket, and his paperwork. He was, thus, left only with one T-shirt, one pair of socks, one pair of boxers, one blue two-piece outfit, and one towel. He wrote Warden Brian English, among others, on September 10, 2024, about his missing personal property, state property, his mattress, and his clothes. Warden English responded that the clothing officer would replace his state items that were taken, but Morrow never got replacements. He followed up with Warden English on December 12, 2024, to no avail. Morrow alleges he had to go from August 28, 2024, until February 5, 2025, without a change of clothes. He sues Warden English for not ensuring that he was provided with a change of clothing.

The Eighth Amendment prohibits conditions of confinement that deny inmates "the minimal civilized measure of life's necessities." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (citations omitted). In evaluating an Eighth Amendment claim, courts conduct both an

3

objective and a subjective inquiry. *Farmer*, 511 U.S. at 834. The objective prong asks whether the alleged deprivation is "sufficiently serious" that the action or inaction of a prison official leads to "the denial of the minimal civilized measure of life's necessities." *Id.* (quotation marks omitted). Although "the Constitution does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), inmates are entitled to adequate food, clothing, shelter, bedding, hygiene materials, and sanitation. *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009); *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006). On the subjective prong, the prisoner must show the defendant acted with deliberate indifference to the inmate's health or safety. *Farmer*, 511 U.S. at 834. Deliberate indifference means that "the official has acted in an intentional or criminally reckless manner, *i.e.*, the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (cleaned up).

It is somewhat concerning that Morrow had only one set of clothes for more than five months. However, he does not spell out how this affected him. Morrow does not allege that the clothing he was provided was somehow inadequate in terms of warmth or coverage. Nor does he allege that he was unable to wash this set of clothes during that five months. Without more the court cannot conclude that having only one set of clothes for more than five months deprived him a life necessity or that the Warden was aware of any harmful effect the lack of a change of clothing had on him. Warden English will be dismissed.

For these reasons, the court:

(1) GRANTS Timothy S. Morrow leave to proceed against D.I.I. T. Heishman, MHL Rogers, Lieutenant B. Meyers, Captain McCullum, Casework Manager T. Hamrick, and Shift Supervisor John Doe in their individual capacities for compensatory and punitive damages for

failing to protect him from a serious risk of harm from his cellmate by denying his August 27, 2024, Protective Custody Request, resulting in him being assaulted on August 28, 2024, in violation of the Eighth Amendment;

(2) DISMISSES all other claims;

(3) DISMISSES B. English;

(4) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) D.I.I. T. Heishman, MHL Rogers, Lieutenant B. Meyers, Captain McCullum, Casework Manager T. Hamrick, and Shift Supervisor John Doe at the Indiana Department of Correction, with a copy of this order and the complaint (ECF 1);

(5) ORDERS the Indiana Department of Correction to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information; and

(6) ORDERS, under 42 U.S.C. § 1997e(g)(2), D.I.I. T. Heishman, MHL Rogers, Lieutenant B. Meyers, Captain McCullum, Casework Manager T. Hamrick, and Shift Supervisor John Doe to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on July 14, 2025.

s/ Theresa L. Springmann  
JUDGE THERESA L. SPRINGMANN  
UNITED STATES DISTRICT COURT